UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-CV-00831-FDW-DCK

| | |
|---|---|
| CHARLINE A. BOEHM and cpsBIORESEARCH, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> FUTURE TECH TODAY, INC., JOSHUA KORN a/k/a JOSHUA PARKER and AAA PRODUCTION, INC., <br><br> Defendants. | ORDER |

**THIS MATTER** is before the Court on Defendant AAA Production, Inc.'s ("Defendant AAA's") Motion to Dismiss for Lack of Jurisdiction. (Doc. No. 6). For the reasons that follow, Defendant AAA's Motion is GRANTED. This case is DISMISSED as it relates to Defendant AAA only. The case will proceed against Defendant Future Tech Today, Inc. ("Defendant Future Tech") and Defendant Joshua Korn a/k/a Joshua Parker ("Defendant Korn").

Plaintiff Charlene A. Boehm ("Plaintiff Boehm") resides in North Carolina. Plaintiff cpsBioResearch, LLC ("Plaintiff cpsBioResearch") is a limited liability corporation that is incorporated in North Carolina with its principal place of business in North Carolina.[1] Defendant AAA is a corporation that is incorporated in Utah with its principal place of business in Utah. Defendant AAA manufactures the GB4000 frequency generator ("GB4000 device"), a frequency-emitting device. Defendant Future Tech Today, Inc. ("Defendant FTT") is a corporation that is incorporated in Oregon with its principal place of business in Oregon. Defendant FTT was a distributor of the GB4000 device.

---

[1] The Court refers to Plaintiff Boehm and Plaintiff cpsBioResearch collectively as "Plaintiffs."

On October 9, 2007, Plaintiff Boehm received a legally issued patent (United States Patent No. 7,280,874) ("the Boehm Patent"), which was titled "Methods for Determining Therapeutic Resonant Frequencies." (Doc. No. 1). "[Plaintiff] Boehm is the owner of the entire right, title, and interest in and to the Boehm patent . . . [and has been] continuously from the date the patent was issued to the present." Id. In 2004, Craig Ledwell ("Ledwell") requested Plaintiff Boehm's assistance with a disease outbreak. Plaintiff Boehm provided some Boehm frequencies to Ledwell, but after Ledwell informed Plaintiff Boehm that he intended to use her method to calculate frequencies on his own, Plaintiff Boehm informed Ledwell that she had applied for a patent on the method and told him that he could not distribute the Boehm frequencies after attending to the outbreak. Plaintiffs allege "Ledwell nevertheless proceeded to calculate therapeutic resonant frequencies" using the Boehm Patent, subsequently gave the Boehm frequencies to Defendant Joshua Korn ("Defendant Korn") of Defendant FTT, and informed Defendant Korn that the frequencies were created using the Boehm Patent. Id.

Plaintiffs allege that Defendant Korn gave the Boehm frequencies to Defendant AAA so that Defendant AAA could provide the Boehm frequencies to customers who purchased the GB4000 device. Plaintiffs also allege that Defendant AAA asked Plaintiffs' customers for their Boehm frequencies. Plaintiffs further allege that Defendant AAA offered to convert the obtained Boehm frequencies to higher ranges and then program these higher-range frequencies into the GB4000 devices for Defendant AAA's customers. Plaintiffs are unclear, however, if this offer was made to Defendant AAA's customers to encourage them to buy the GB4000 device, or if the offer was presented to Defendant AAA's customers who had already purchased a GB4000 device. Plaintiffs allege Defendant AAA did all of this with "willful, deliberate, and reckless disregard" of the Boehm patent. Id.

2

Plaintiffs filed the present Complaint against Defendant Korn, Defendant FTT and Defendant AAA on December 14, 2012, containing a federal claim of method patent infringement and a state claim of wrongful interference with contract. Defendant AAA subsequently filed a Motion to Dismiss for Lack of Personal Jurisdiction on May 2, 2013. (Doc. No. 6). In support of its Motion, Defendant AAA argues that Plaintiffs' Complaint fails to allege facts to support personal jurisdiction, and that the Court lacks both general jurisdiction and specific jurisdiction over Defendant AAA. (Doc. No. 7). In their Opposition to the Motion to Dismiss for Lack of Jurisdiction, Plaintiffs specifically state that they do not claim that AAA is subject to general jurisdiction. Plaintiffs instead argue that the Court has personal jurisdiction over Defendant AAA because Defendant AAA's actions fall within North Carolina's long-arm statute and the exercise of personal jurisdiction is consistent with due process. Plaintiffs also argue that the Court may hear Plaintiffs' state law claim of wrongful interference with contract under supplemental jurisdiction.

As the parties do not dispute that the Court does not have general jurisdiction over Defendant AAA, the Court finds no need for an in depth analysis of this issue, although the Court concurs that it does not have general jurisdiction over Defendant AAA in this case. Accordingly, the Court moves forward to analyzing whether it has specific jurisdiction. In this case, North Carolina's long arm statute has been held to grant the full extent of federal jurisdictional powers under due process. Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F. Supp. 184, 186 (W.D.N.C. 1990). Thus, the key issue in this case is whether the Court's exercise of personal jurisdiction conforms to due process.

To determine if the Court has specific jurisdiction on conformity with due process, the Court must decide if Defendant has "minimum contacts" within the forum state, the claim at

issue stems from those contacts, and the exercise of jurisdiction is constitutionally reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (U.S. 1985). Such contacts must create a "substantial connection" to the state in question and defendants must have deliberately "engaged in significant activities within a State." Elecs. For Imagining, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003) (quoting Burger King Corp., 471 U.S. at 475). The Federal Circuit summarizes the specific jurisdiction test as "First, did the defendants purposefully directs its activities at residents in the forum; second, does the claim arise out of or relate to those activities; and third, is the assertion of jurisdiction reasonable and fair." Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).

Defendant AAA first argues that it has not purposefully directed its activities into North Carolina. Specifically, Defendant AAA argues that it has only made minimal drop-shipments of GB-4000 devices into North Carolina addresses, all of which were at the request of third parties. Defendant AAA argues that it has never targeted North Carolina in advertising, sponsored events in North Carolina, and that it does not actively seek distributors in North Carolina. Second, Defendant AAA argues that Plaintiffs' claims do not arise from or relate to any forum activities of Defendant AAA. Defendant AAA alleges Plaintiffs have not argued that the patent infringement of their method claims relate to any contacts of Defendant AAA in North Carolina. Defendant AAA argues that it has only engaged in limited forum activities, such as limited drop shipping of a number of generator devices at the request of third parties, which does not give rise to a claim for direct patent infringement. Defendant AAA also argues that it has not engaged in activities in North Carolina that would give rise to a claim for induced patent infringement.

Plaintiffs argue that the Court has specific personal jurisdiction because the exercise of personal jurisdiction is consistent with due process since Defendant AAA purposefully directed

4

its activities to residents of North Carolina, the claims relate to those activities, and the assertion of personal jurisdiction is reasonable and fair. More specifically, Plaintiffs argue that Defendant AAA purposefully directed its activities to residents of North Carolina both through direct shipment of the GB4000 device into North Carolina, and through the actions of its distributor. According to Plaintiffs, these activities constitute activities that comprise infringement of the Boehm patent. Plaintiffs argues that it has identified the sale of a GB4000 device that was drop-shipped directly from Defendant AAA to a customer in North Carolina, has identified the disclosure of Boehm resonant frequencies emailed from Defendant AAA's distributor directly to a customer in North Carolina, has identified webinars available to individuals in North Carolina where Defendant AAA claims that it possesses Boehm resonant frequencies, and has shown that Defendant AAA made those frequencies available to its customers.

The Court now addresses each of Plaintiffs' arguments that Defendant AAA has minimum contacts with North Carolina. First, the Court examines whether Plaintiffs' allegation that Defendant AAA sold (at least) one device to a customer in North Carolina and delivered that device directly to the customer establishes minimum contacts between Defendant AAA and North Carolina. Plaintiffs allege that Defendant AAA sold and delivered (at least) one of its GB4000 devices to a customer in North Carolina. Plaintiffs bolster this allegation with Beverly Hills Fan Co. v. Royal Sovereign Corp., arguing that even a product sold into a state via a distributor can establish a minimum contact with that state. 21 F.3d 1558 (Fed. Cir. 1994); (Doc. No. 8, p. 13-14). Under 35 U.S.C.S § 271(a-b), a person who "makes, uses, offers to sell, or sells any patented invention" without authorization is guilty of patent infringement, and whoever promotes infringement is liable for patent infringement. However, although this allegation could potentially show how Defendant AAA purposefully availed itself of the privilege of conducting

5

activities in North Carolina, it does not show how this transaction relates to Plaintiffs' patent infringement claim.

In Beverly Hills, the defendant was the manufacturer of an allegedly-infringing product. 21 F.3d 1558, 1560 (Fed. Cir. 1994). The manufacturer's product was allegedly sold in Virginia via distributors. Id. However, the business ties between manufacturer and distributor in Beverly Hills was described by the Court as an "established distribution channel" that was purposefully directed at the forum state. Id. at 1565. In World Wide Volkswagen, Corp. v. Woodson, the Supreme Court held that it was reasonable to find jurisdiction over an out-of-state manufacturer or distributor of allegedly defective products so long the sale of the product was "not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other [s]tates . . . ." 444 U.S. 286, 297-98 (1980).

In this case, Garff attested that Defendant AAA "does not actively seek distributors" in North Carolina and that Defendant AAA does not advertise the GB4000 device. Rather, Defendant AAA sells the device through third party distributors, such as Defendant FTT. Any deliveries in North Carolina (and elsewhere) are done on behalf of those distributors. Defendant AAA's distributor agreement supports these claims. Therefore, the delivery of a GB4000 device into North Carolina does not show how Defendant AAA, of its own volition, made an effort to serve the market for its product in North Carolina.

Furthermore, Garff, in his affidavit, attested that Defendant AAA never sold GB4000 devices that were pre-programmed with the converted Boehm frequencies to a distributor in North Carolina or to a customer in North Carolina. Plaintiffs do not allege that the GB4000 device delivered in North Carolina, by itself, infringed the Boehm Patent. Therefore, not only

6

was the delivery of the GB4000 device into North Carolina done at the request of a third party, but the GB4000 device was not an allegedly-defective or infringing product, and the delivery does not show cause of action for the patent infringement claim. As such, the allegation fails to establish minimum contacts between Defendant AAA and North Carolina.

Second, the Court analyzes whether Plaintiffs' allegation that Defendant FTT wrongfully disclosed the Boehm frequencies to a resident of North Carolina establishes minimum contacts between Defendant AAA and North Carolina. Plaintiffs allege[2] that Defendant FTT disclosed the Boehm frequencies via email to a customer in North Carolina. Plaintiff argues that Defendant AAA is liable for Defendant FTT's wrongful actions in North Carolina because Defendant FTT is a distributor of Defendant AAA. However, Plaintiffs' argument is not supported by case law or evidence.

As noted by Defendant AAA, a defendant is guilty of infringement when he, either directly or by inducing another to act, performs "all the steps of a claimed method . . . ." Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1306 (Fed. Cir. 2012). Plaintiffs have not shown that Defendant FTT is under Defendant AAA's direct control. Garff attested in his affidavit, and Defendant AAA's distributor agreement appears to support, that Defendant FTT is not an agent of Defendant AAA but is a third party distributor. As mentioned previously, Defendant AAA "does not actively seek distributors . . . ." (Doc. No. 7-1, p. 3). Furthermore, the distributor agreement, although it contains some guidelines, informs would-be distributors that once they purchase a product from Defendant AAA, the product is theirs (and their

---

[2] The Court notes that Plaintiffs' Complaint does not specifically allege that Defendant FTT offered the Boehm frequencies to customers in conjunction with the sale of GB4000 devices in North Carolina. (Doc. No. 1, p. 4). The reference to North Carolina is found only in Plaintiff Boehm's Declaration and the Response. (Doc. No. 8-1, p. 4; Doc. No. 8, pp. 9, 10, 16). To be fair to Plaintiffs, the Court choses to address this allegation in its more specific form as it is found in the Declaration, which has the same authority of a sworn affidavit so long as it is "subscribed by [Plaintiff] as true under penalty of perjury." 28 U.S.C. § 1746.

7

responsibility). Plaintiffs do not allege that Defendant FTT is Defendant AAA's agent. The fact that Defendant FTT is Defendant AAA's distributor, on its own, defeats Plaintiffs' argument that Defendant AAA is responsible for Defendant FTT's actions.

In addition, Plaintiffs have neither shown nor alleged that Defendant AAA incited Defendant FTT to wrongfully distribute the Boehm frequencies to customers (induced infringement), or that Defendant AAA sold or offered to sell an infringing product in North Carolina (contributory infringement). See 35 U.S.C. § 271(b-c). In fact, both Plaintiff and Defendant AAA agree that although Defendant AAA was eventually made aware [of the possibility] that Defendant FTT was wrongfully infringing the Boehm patent, Defendant AAA prohibited those actions and ceased to do business with Defendant FTT until Defendant Korn assured Defendant AAA that Defendant FTT would alter its behavior. Therefore, the allegation does not support Plaintiff's claim that Defendant AAA is responsible for Defendant FTT's actions and does not establish minimum contacts between Defendant AAA and North Carolina.

Third, Plaintiffs argue that Garff's admittance in a webinar that he converted and programed Boehm frequencies at a higher level for a customer and that he offered to supply the Boehm frequencies to other customers establish minimum contacts between Defendant AAA and North Carolina. Plaintiffs allege[3] that, in a series of webinars, Garff admitted to converting the Boehm frequencies to higher ranges and programing them into a GB4000 device on behalf of a customer. (Doc. No. 8-1, pp. 3-4). Plaintiffs further allege that, in these webinars, Garff offered to distribute the Boehm frequencies to customers upon request. Plaintiffs attempt to bolster these

---

[3] The Court notes that Plaintiffs' Complaint was vague in regards to the allegation that Defendant AAA assisted customers with converting and programing the Boehm frequencies into the GB4000 device. The specific mention of the webinar, which appears to encompass the original allegation set forth in the Complaint, is found only in Plaintiff Boehm's Declaration and the Response. (Doc. No. 8-1, pp. 3-4; Doc. No. 8, pp. 3-4). For the sake of clarity, the Court choses to address this allegation in its more specific form as it is found in the Declaration, which has the same authority of a sworn affidavit so long as it is "subscribed by [Plaintiff] as true under penalty of perjury." 28 U.S.C. § 1746.

8

allegations with a letter from Defendant AAA's prior counsel. However, as in the sections above, these allegations do not show how Defendant AAA purposefully availed itself of the privilege of conducting activities in North Carolina.

The Court notes that the letter from Defendant AAA's prior counsel does not state—contrary to Plaintiff's claims—that Defendant AAA "provide[d] Boehm frequencies to some customers." Id. at 16. Rather, the letter states only that Defendant AAA assisted some customers with using the Boehm frequencies the customers had previously purchased from another source. Therefore, the letter from Defendant AAA's prior counsel does not support Plaintiff's allegations. Also, even though Garff appears to admit converting the Boehm frequencies and programing them into the GB4000 device on behalf of a customer in one webinar, the webinar does not state, nor does Plaintiff allege, that this interaction took place in North Carolina or that it occurred between Garff and a resident of North Carolina. This admittance, without more, does not show how Defendant AAA purposefully availed itself of the privilege of conducting activities in North Carolina.

Furthermore, just because the webinar is accessible to residents of North Carolina does not establish minimum contacts between Defendant AAA and North Carolina. Plaintiffs have not identified if the webinar comes from a "passive website," which is primarily used to display information and is less likely to show how Defendant purposefully availed itself of the privilege of conducting activities in the forum state, or if the webinar comes from an "active website," which is primarily used for interaction and is more likely to show how Defendant purposefully availed itself of the privilege of conducting activities in the forum state. (Doc. No. 8-1, pp. 3-4); Robinson v. Bartlow, 2012 U.S. Dist. LEXIS 143323 at 14-15 (W.D. Va. Oct. 3, 2012).

In this case, because Plaintiffs only mention the existence of a webinar, and due to the

9

informational nature of the webinar (which does not appear to be specifically directed in any way at North Carolina or residents of North Carolina), the Court concludes that the webinar represents a "passive website," and that it does not show how Defendant AAA purposefully availed itself of the privilege of conducting activities in North Carolina. Id.; (Doc. No. 9-1, pp. 3-8; Doc. No. 7-1, p. 4). Furthermore, even if the website were an "active website," such a status would not necessarily establish minimum contacts. Therefore, Garff's admission to past actions in a webinar does not establish minimum contacts between Defendant AAA and North Carolina.

In addition, Plaintiff Boehm's Declaration (which the Court will recognize as an affidavit for the purposes of this Order (see 28 U.S.C. § 1746)), alleges that Garff offered to distribute the Boehm frequencies to customers while speaking in a webinar, while portions of the seminar recorded in Garff's affidavit appear to show that he made no such offer. In the face of this conflict, the Court must look at the allegations as they favor Plaintiffs. See Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1201 (Fed. Cir. 2003). However, even assuming Plaintiffs' allegations to be true, they are not enough to establish minimum contacts between Defendant AAA and North Carolina.

As discussed above, a "passive website" generally does not show that a defendant purposefully availed himself of the privilege of conducting activities in a state. Robinson v. Bartlow, 2012 U.S. Dist. LEXIS 143323 at 14-15 (W.D. Va. Oct. 3, 2012). However, the Fourth Circuit has held that even if a website may be deemed interactive, the importance of an interactive website for the purposes of establishing minimum contacts in the forum state depend on the amount and capability of commercial exchanges taking place through the website. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 400 (4th Cir. 2003) (citing Zippo Mfg. Co. v. Zippo DOT Com, Inc., 952 F. Supp. 1119, 1126 (W.D. Pa. 1997)).

Furthermore, even an offer to sell within a website, without directly targeting the forum state, does not establish a minimum contact with the forum state merely because the website is accessible over the internet. Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc., 301 F. Supp. 2d 545, 553 (E.D. Va. 2004); Distinguished from Minute Man Anchors, Inc. v. Oliver Techs., Inc., 2005 U.S. Dist. LEXIS 47973 at 21-24 (W.D.N.C. Aug. 5, 2005) (where defendant actively sought to market products in North Carolina and had a website with a reference to North Carolina).

In this case, even if an offer to distribute may be likened to an offer to sell an infringing product, the offer alone is not enough to show how Defendant AAA purposefully availed itself of the privilege of conducting activities in North Carolina. Nothing stated in the webinar or the allegation shows any link to or aim directed at North Carolina or residents of North Carolina Furthermore, in the Garff affidavit, Garff attested that Defendant AAA does not sell its products directly. According to Garff, customers are directed on Defendant AAA's website to contact their local distributor in order to purchase the GB4000 device. Based on the allegations and evidence presented, it appears to the Court that the webinar was an isolated offer to distribute, and that Defendant AAA's website does not show how Defendant AAA purposefully availed itself of the privilege of conducting activities in North Carolina. Therefore, the allegations do not establish minimum contacts between Defendant AAA and North Carolina.

Fourth, Plaintiffs argues that its claims that Defendant AAA acquired Plaintiff Boehm's frequencies from Plaintiffs' customers and offered to convert those frequencies at higher range and program the higher frequencies into the GB4000 device in conjunction with selling the GB4000 device establish minimum contacts between Defendant AAA and North Carolina. Plaintiffs allege that Defendant AAA wrongfully acquired the Boehm frequencies from

11

Plaintiffs' customers, offered to convert the Boehm frequencies at a higher range for the customers, and then offered to program the higher frequencies into the GB4000 devices manufactured by Defendant AAA. Plaintiffs' allegations are unclear as to whether this offer by Defendant AAA to program the Boehm frequencies into the GB4000 device was made to customers who had already purchased a GB4000 device, or if the offer was used as an incentive for customers to buy the GB4000 device.

In either case, the allegations that Defendant AAA acquired Boehm frequencies and offered to convert and program the frequencies into a GB4000 device, without more detail, do not establish minimum contacts between Defendant AAA and North Carolina. Plaintiffs have neither shown nor alleged that any of these interactions between Defendant AAA and Plaintiffs' customers took place in North Carolina or involved a resident North Carolina. Plaintiffs only describe the customers in a general sense, labeling them as "certain customers" in Plaintiff Boehm's Declaration, (Doc. No. 8-1, p. 3) and "customers of Boehm" in the Complaint. (Doc. No. 1, p. 5).[4] Therefore, based on the broadly-worded allegations in the Complaint, Plaintiffs have not shown how Defendant AAA purposefully availed itself of the privileges of conducting activities in North Carolina, and the allegations do not establish minimum contacts between Defendant AAA and North Carolina.

Plaintiffs' argues Defendant AAA has minimum contacts with North Carolina because Defendant AAA used the Boehm patent to make Boehm frequencies, and that Defendant AAA used the Boehm frequencies to "promote and sell" the GB4000 device. Plaintiffs allege that

---

[4] The Court notes that Plaintiffs were more specific in their Response in Opposition to (Defendant AAA's) Motion to Dismiss, stating that Defendant AAA offered to program the Boehm frequencies into the GB4000 device for its "customers in North Carolina." (Doc. No. 8, p. 10). However, this Response, "just as any brief, is not a source of evidence which a court may consider on a motion to dismiss supported by affidavits." McLaughlin v. Copeland, 435 F. Supp. 513, 519 (D. Md. 1977) (ruling that an appendix included in a response by the plaintiff opposing a motion to dismiss for lack of jurisdiction could not be considered as evidence against a motion "supported by affidavits"). Therefore, Plaintiffs' Response cannot be considered as evidence in this matter.

Defendant AAA used the Boehm patent (method) to create Boehm frequencies. Plaintiffs further allege that Defendant AAA used the Boehm frequencies to "promote and sell" the GB4000 device. (Doc. No. 1). However, as decided above, Plaintiffs do not give any indication to this Court as to where these alleged actions took place or if they are in any way connected to North Carolina. Neither the State of North Carolina nor a resident of North Carolina is mentioned in conjunction with these allegations. Therefore, Plaintiffs have not shown how Defendant AAA purposefully availed itself of the privileges of conducting activities in North Carolina, and the allegations do not establish minimum contacts between Defendant AAA and North Carolina.

Overall, none of Plaintiffs claims establish that there are minimum contacts between Defendant AAA and North Carolina. As such, this Court may not exercise specific jurisdiction over Defendant AAA and Plaintiffs' federal claims against Defendant AAA must be dismissed. As the Court lacks original jurisdiction over Defendant AAA, it declines to exercise supplemental jurisdiction over Defendant AAA for the state law claim of wrongful interference with contract and that claim is hereby dismissed as well. Accordingly, the Court grants Defendant AAA's Motion to Dismiss for Lack of Jurisdiction.

For the above reasons, the Court finds that it lacks personal jurisdiction to hear this case against Defendant AAA with respect to Plaintiffs' federal claim, and the Court declines to exercise supplemental jurisdiction over Defendant AAA for Plaintiffs' state law claim. As such, Defendant AAA's Motion to Dismiss for Lack of Jurisdiction is GRANTED. Defendant AAA is no longer a party to this action before this Court. Nonetheless, this case will proceed against Defendant FTT and Defendant Korn.

With this issue resolved, Defendants FTT and Korn are hereby ORDERED to file their respective answers to Plaintiffs' Complaint within ten (10) days of the issuance of this Order.

IT IS SO ORDERED.

Signed: September 23, 2013

Frank D. Whitney
Chief United States District Judge